SAMUEL ROSENFELD, Respondent, v. JOSEPH
SIEGFRIED, Appellant.

**St. Louis Court of Appeals, December 17, 1901.**

1. **Evidence:** CERTIFIED COPY OF ORDER ADJUDGING A PERSON A BANKRUPT IS COMPETENT EVIDENCE: FEDERAL COURT: STATUTORY CONSTRUCTION. Under the provisions of section 3135, Revised Statutes 1899, a certified copy of an order of the Federal court adjudicating a corporation a bankrupt, is a copy of a judgment of a Federal court and is competent evidence.

2. ———: VOLUMINOUS BOOK ACCOUNTS, HOW PROVED: TESTIMONY OF ACCOUNTANT. It is competent for an accountant, who has made an examination of the books of a corporation in respect to the amount of stock the books showed the company to have in

hand, to testify as to the result of his examination, under an appropriate issue raised by the pleadings.

3. ——: WITNESS: TRANSCRIPT OF STENOGRAPHIC NOTES, WHEN COMPETENT. In the case at bar, the evidence of the witness, Tolles, consisting of a transcript from his stenographic notes of the evidence given by defendant in his deposition before the referee in bankruptcy (defendant waiving the right to insist on the witness testifying from the notes), is admissible as admissions by defendant against his interests, and no preliminary steps were necessary to qualify the witness to testify in respect thereto, other than to produce the witness and put him under oath.

4. ——: INSTRUCTION: BANKRUPTCY LAW: GOOD FAITH: CONSIDERATION: CONSTRUCTION OF BANKRUPTCY LAW. In the case at bar, the following instruction properly states the law under the Bankruptcy Act of 1899. "The court instructs the jury that under the national bankruptcy law, all conveyances and transfers of property made or given by a person or corporation adjudged a bankrupt, within four months prior to the filing of the petition in bankruptcy, with the intent and purpose on the part of the bankrupt to hinder, delay or defraud its creditors or any of them, are null and void, as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; and all property of the debtor so conveyed or transferred shall be and remain a part of the assets and estate of the bankrupt, and shall pass to his trustee, whose duty it shall be to recover and reclaim the same, by legal proceedings, or otherwise, for the benefit of the creditors. The court further instructs you that the petition in bankruptcy against the Mechanics' Clothing Manufacturing Company was filed on the first day of May, 1899, and that said company was thereafter duly declared and adjudged to be a bankrupt, and that the plaintiff in this case is the duly qualified trustee in bankruptcy of said company. If, therefore, you believe from the evidence that at any time within four months prior to the first day of May, 1899, the Mechanics' Clothing Manufacturing Company transferred or conveyed to the defendant a lot of clothing, with the intention on its part of hindering, delaying or defrauding its creditors, or any of them, you will find in favor of the plaintiff, provided you also find from the evidence that the defendant at the time of the transfer to him did not pay a present fair consideration for such clothing."

5. Bankrupt Law: CONFLICT OF LAW. Rights and liabilities of the parties in a court of bankruptcy are controlled by the bankrupt act and when the state law comes in conflict with it, it must yield.

6. **Jury:** VERDICT: DAMAGES: REMITTITUR: MISTAKE OF JURY, HOW CURED. Where the amount of the verdict of a jury is largely in excess of the damages proven under either count of a petition, and there is a general verdict on two counts, and no exceptions were made or saved thereto, this mistake of the jury is cured by a remittitur.

Appeal from St. Louis City Circuit Court.—*Hon. William Zachritz,* Judge.

AFFIRMED.

### STATEMENT OF THE CASE.

After alleging the necessary facts to authorize plaintiff to sue, the material allegations in the first count of the petition are in substance, that within four months of the filing of the petition in bankruptcy against the Mechanics' Clothing Manufacturing Company, the bankrupt, it made a fraudulent sale of two thousand dollars' worth of clothing to defendant and that the defendant participated in the fraud and that no cash or other thing of value was paid in consideration for said goods.

In the second count of the petition it is in substance alleged, that while the bankrupt was insolvent and being so insolvent, within four months of the filing of the petition in bankruptcy, it was indebted to the defendant in the sum of nine hundred and fifty-four dollars and ninety-four cents and that it transferred to the defendant goods to the value of nine hundred and fifty-four dollars and ninety-four cents and that the effect of such transfer operated as a preference to defendant within the meaning of the bankruptcy act, and that defendant had reasonable cause to believe that the transfer of the goods to him was intended to give him preference. The answer was a general denial. The trial was had to a jury which resulted in a verdict in favor of the plantiff for two thousand and forty-seven dollars and thirty-one cents. Plaintiff re-

mitted one thousand and sixty-five dollars and fifteen cents and judgment was rendered in his favor for the balance, nine hundred and eighty-two dollars and eighteen cents. In due time defendant filed his motion for a new trial, which motion was overruled and he appealed.

On the trial, plaintiff offered and read in evidence a certified copy of the order of adjudication in bankruptcy of the Mechanics' Clothing Manufacturing Company. Defendant's counsel objected to this order on the ground that it was not accompanied by the petition in bankruptcy which objection was overruled and the order of adjudication, dated November 20, 1899, was read in evidence. A certified copy of the order of reference was also read in evidence and a copy of the order of approval of the bond of Rosenfeld, the plaintiff, as trustee.

Defendant had testified before the referee in bankruptcy and the notes of his testimony were taken by C. H. Tolles, a stenographer, who had made a written transcript of the testimony of the defendant from his notes. An objection was made to this, not on the ground that the witness should testify from his notes, but for the reason that the necessary preliminary steps for the introduction of the testimony had not been made. This objection was overruled and the transcript of the testimony of defendant was read in evidence. The evidence is substantially as follows: That defendant was formerly in business in Jefferson City, under the style of J. Seigfried, and is now in business at No. 804 North Second street, St. Louis; that he had had dealings with the Mechanics' Clothing Manufacturing Company and Mr. Benno Prinz for a number of years; had bought goods from the Mechanics' Clothing Manufacturing Company and gave them notes and afterwards paid the notes. That on January sixteenth he went into their place of business and ordered some goods from them, picked out some goods and when he was done with buying goods of the Mechanics' Clothing Manufacturing Company, Mr. Prinz told him how much he had

bought and asked him if he could do a favor for him, if he would not settle the bill with notes and he told him yes, and asked what benefit that would be to him. And Prinz said, "I will give you thirty and sixty days longer." Defendant gave him the notes the sixteenth day of January. The notes amounted to over nine hundred dollars. Defendant said, "I took a notion to quit in Jefferson City and not go back and I told the Mechanics' Clothing Manufacturing Company to hold the goods until I got ready to take them. I got ready in March and took the goods in March, but can not remember the date. I picked out the goods in January and they were packed in January and I did not want the goods to be shipped to Jefferson City because I quit in Jefferson City. I took them to my house where I live, at No. 1905 Wash street and kept the goods there until I got customers and sold them. I could not tell how long it was before I sold them, about two weeks; kept them in the front room. Customers came there to see them. They were packed in boxes. I sold the goods out to different parties. I got out of these goods just what they cost me. I gave two notes for the goods, amounting to nine hundred and fifty or nine hundred and fifty-nine dollars. I think the first note was for about four hundred and seventy-five dollars and eighty-two cents. It had to run four or five months. I paid the second note at the National Bank of Commerce. Prinz told me he could use the money. I did not quit business in Jefferson City until July, 1899." The defendant further said that he always gave notes when he bought goods, but he got out of these goods exactly what he agreed to pay for them; that he kept the goods in his house two weeks before he sold them; that he sold them to customers from the south; that the goods were packed in large boxes and he had them hauled himself from the Mechanics' Clothing Manufacturing Company out to his own house; that he had paid both of the notes; that he had always lived in St. Louis but had had a business in Jefferson City.

The plaintiff testified that he had received to date, for the assets of the Mechanics' Clothing Manufacturing Company, four thousand and seventy-five dollars and that the balance in his hands was three hundred and twenty-two dollars and forty-four cents, and some claims and accounts that are regarded as worthless; that there is about thirty-four thousand dollars in allowed claims against the estate of the bankrupt, and five thousand two hundred dollars in claims that are scheduled that have not been proven up to date; that he had paid ten per cent on allowed claims.

James A. Parks testified that he was an accountant; that he had examined the books of the Mechanics' Clothing Manufacturing Company and had before him the ledger, journal, cash and sales book. After referring to the books he stated that on the first of April, 1899, the books show that the Mechanics' Clothing Manufacturing Company should have forty-six thousand three hundred and ninety-six dollars and forty-one cents of merchandise on hand and that they had a few open accounts; that the account of J. Siegfried, as shown on the books, shows a credit balance of nine hundred and fifty-nine dollars and ninety-four cents, evidenced by two notes under the head of bills payable; that the sales book of the company did not show that any goods were sold by it to defendant in the months of January, February, March or April; that the books show that the two notes had been sold. Evidence was introduced by plaintiff showing that Prinz was president of the Mechanics' Clothing Manufacturing Company and had charge of its business and was in the habit of discounting notes for the benefit of the firm, and evidence tending to show that the Mechanics' Clothing Manufacturing Company was largely indebted to divers creditors and contracted large debts during the months of January, February, March and April, 1899, and sent piece goods to an auction house in the city of St. Louis to be sold on their account.

Sol S'Renco testified that he had known the defendant

for fifteen years; that in April, 1899, he was manager for the M. A. Brown Clothing Company in St. Louis, and that defendant was its nominal president, but had no financial interest in the concern; that defendant, in the spring of 1899, made the place of business of the Brown Clothing Company his headquarters and that he brought some pants and placed them on the shelves, near the latter part of March or the first of April, that he had gotten from the Mechanics' Clothing Manufacturing Company; that he was frequently at the residence of the plaintiff and was there in March, 1899, on several occasions; that he was in the front room or parlor of the residence, and that there were no boxes of goods in that room; that defendant told him that he had found out that Mr. Prinz, or the firm of the Mechanics' Clothing Manufacturing Company, was going to fail, and that he was always giving them accommodation notes, and that he went over there and Mr. Prinz told him that he should not be uneasy, he would pay the notes, but he was afraid, and that Prinz gave him a stock of clothing to cover the notes (accommodation notes he called them); that he heard a conversation between Prinz and defendant in the spring of 1900, about defendant going before the referee in bankruptcy to testify and that Prinz told defendant to claim that he had bought all the goods and gave these two notes for them; that if he claimed otherwise he would have to pay over again for the goods and Seigfreid said that he would claim he bought the goods in January; that there were two or three cases of pants brought by defendant from the Mechanics' Clothing Manufacturing Company and that Seigfried sold them at the store of the Brown Clothing Company on his own account.

A list of allowances against the bankrupt estate, aggregating twenty-nine thousand nine hundred and fourteen dollars and eleven cents, was read in evidence.

The defendant, for himself, testified that he bought the goods of the Mechanics' Clothing Manufacturing Company

on the fifteenth day of January, 1899; that they were spring goods and were all suits and pants; that at the time he had a clothing store in Jefferson City, Missouri; that he made the purchase at the solicitation of Mr. Prinz; that after he had picked out the goods they wanted the money on them in sixty days and he told them he did not buy clothing on sixty days' time, that he bought at four or five months as other merchants bought. Prinz then called him into the office and asked him to accommodate him and to give him notes that he could discount. He agreed then to give him notes. The bookkeeper made them out to be due in four or five months and he gave the notes and told the house not to ship the goods until he ordered them shipped and he went to Jefferson City and took stock and then made up his mind to quit business there and notified the Mechanics' Clothing Manufacturing Company not to ship the goods, that he was looking for another location and could not find any to suit him; that about the first of March he had the goods hauled to his house on Wash street and that he had some customers for spring goods and that he sold some to customers in the south and some to his brother-in-law and had some left which he took to the Brown Clothing Company and put in the store. He denied the statements of S'Renco and said that S'Renco was an enemy of his.

Prinz testified that he was vice-president and treasurer of the Mechanics' Clothing Manufacturing Company; that he was acquainted with S'Renco; that he never had the conversation with Siegfried testified to by S'Renco; that Seigfried had been a customer of his; that when he bought the goods he did not have all of them ready and a portion of them had to be manufactured; that Siegfried said, "When you have the goods ready I will let you know when to ship them;" that he came back to the store sometime afterwards and instructed them not to ship the goods, that he did not need them then and that he would let them know when to ship them; that after he had picked out the goods he asked Siegfried to settle

the matter by notes, and that he agreed to settle that way; that he first found out the firm was insolvent sometime in the year 1899, but could not fix the date.

Fritz Fleer testified, for defendant, that he was secretary of the Mechanics' Clothing Manufacturing Company and held the position up to the time the business failed; that the two notes of Siegfried, one for four hundred and seventy-five dollars and eighty-five cents and the other for four hundred and eighty-four dollars and twelve cents, were given to the company on the day of their date; that Siegfried on that date placed an order with the company and the notes were given in settlement. The order was for clothing. Part of the clothing had to be made up; that there is no charge on the books of the company for the sale of goods to Seigfried for January, February, March or April; that there was not much attention paid to the Siegfried order because it was settled; that the books showed the company purchased in March, two thousand three hundred and sixty-eight dollars worth of goods and in February, three thousand and fifteen dollars and forty-five cents worth; that no stock was taken during the life of the Mechanics' Clothing Manufacturing Company and the merchandise account on the ledger would not give a true statement of its affairs.

*Collins, Jamison & Chappell* for appellant.

(1) The general rule is that where a party intends to avail himself of a judgment or decree, as an adjudication upon the subject-matter, he must show the proceedings upon which the decree or judgment was founded. And records when used in such cases must be produced entire. The lower court, therefore, erred in admitting a certified copy of the order of adjudication in bankruptcy of the Mechanics' Clothing Manufacturing Company, because the petition was not offered and no

foundation laid for the introduction of the adjudication in bankruptcy. For the same reasons the court erred in admitting the certified copy of the order of reference and a certified copy of the order of approval of bond of Samuel Rosenfeld. Cone v. Dawson, 19 Mo. App. 214; Abbot Trial Evidence, pp. 536-537; 4 Comyn Digest, title Evidence, 89; Philipson v. Bates, 2 Mo. 120. (2) The books of the Mechanics' Clothing Manufacturing Company were not competent evidence for the purpose of showing its financial condition. (3) The rule that a voluntary purchaser of property will be charged with knowledge when there are facts reasonably sufficient to put a prudent person on inquiry does not apply to sales of personal property. Simmons v. O'Niell, 60 Mo. App. 530; Van Raalte v. Harrington, 101 Mo. 602; State to use, etc., v. Mason, 112 Mo. 380; Parker v. Connor, 93 N. Y. 118; Carroll v. Hayward, 124 Mass. 120. (4) The proper province of an instruction is to submit questions of fact, not propositions of law. Albert v. Besell, 88 Mo. 150; Hurt v. Railroad, 94 Mo. 264; State v. Hudspeth, 150 Mo. 12. (5) It is error for the court to give inharmonious and conflicting instructions. State v. Algair, 88 Mo. 603.

*Sale & Sale* for respondent.

(1) No error was committed in admitting in evidence the certified copy of the order of adjudication in bankruptcy of the Mechanics' Clothing Manufacturing Company, or of the order of reference, or of the order of approval of the bond of Samuel Rosenfeld, without the production of the remainder of the record: First. Because the bankruptcy act expressly provides for their use in evidence and their probative force. Bankruptcy Law of 1898, Sec. 21, d and e. Second. Because being introduced only collaterally, to show that the decrees or orders were made, and not to establish the facts in dispute between the parties to the record, it was sufficient to introduce

the orders.   Lee's Adm. v. Lee, 21 Mo. 534; Seymour v. New-man, 77 Mo. App. 578.   (2)   One of the issues involved in the controversy was the conduct of the Mechanics' Clothing Manufacturing Company, its insolvency, and its intent in making the transfer; hence, the books of the Mechanics' Clothing Manufacturing Company, the checks paid said company shortly prior to its failure, the list of allowed claims against the estate of the Mechanics' Clothing Manufacturing Company, and the testimony of witness Prinz as to the solvency or insolvency of the Mechanics' Clothing Manufacturing Company, and as to the disposition by him as manager of said company of a check for $500, shortly prior to the failure, were all competent.   Holmes v. Braidwood, 82 Mo. 610; Singer v. Goldenberg, 17 Mo. App. 549.   (3)   The testimony of witness James A. Parks, stating his summaries of the voluminous entries in the books of the Mechanics' Clothing Manufacturing Company, was competent, especially in view of the fact that the books themselves were present in court.   Greenleaf on Evidence (16 Ed.), sec. 563h, p. 690; Ritchey v. Kinney, 46 Mo. 298; State v. Findley, 101 Mo. 217.   (4) The admission of the list of allowed claims, in so far as it was relevant, was expressly consented to by counsel.   Furthermore, this testimony showed nothing more than what was testified to by defendant's witnesses.   (5)   Instruction No. 1, given for plaintiff, correctly stated the law as declared in the bankruptcy act, which is the supreme law governing this case. Bankruptcy Act of 1898, sec. 67e.   The fact that it assumes facts as to which the evidence is clear and positive, and which are in no way contradicted in the evidence, does not constitute an error.   Van Natta v. Railroad, 133 Mo. 13; Fields v. Railroad, 80 Mo. 203; Schmidt v. Railroad, 63 S. W. 834.

BLAND, P. J.—I.   The certified copy of the order of the Federal court, adjudicating the Mechanics' Clothing Man-

ufacturing Company a bankrupt, was a copy of a judgment of a Federal court and was competent evidence under the provisions of section 3135, Revised Statutes 1899. When such a judgment is offered to prove a fact collateral to the main issue, it is not necessary that anything more than an exemplified copy of the judgment itself be produced. Lee's Adm'x v. Lee, 21 Mo. 531; Seymore v. Newman, 77 Mo. App. 578.

II.    One of the issues raised by the pleadings was the financial condition of the clothing company at the time it had the transaction with defendant. Its books of account were competent evidence on this issue and the testimony of the witness, Parks, who had examined the books, in respect to the amount of stock the books showed the company to have on hand, was competent under the rule that where voluminous book accounts are to be put in evidence it is competent to prove by an accountant, who has made an examination of the books, the result of such examination. State v. Findley, 101 Mo. 217; Greenleaf on Evidence (16 Ed.), sec. 563. The evidence of the witness, Tolles, consisting of a transcript from his stenographic notes of the evidence given by defendant in his deposition before the referee in bankruptcy (defendant waiving the right to insist on the witness testifying from the notes), it seems to us, was clearly admissible as admissions by defendant against his interests, and we are unable to understand what further preliminary steps were necessary to qualify the witness to testify in respect thereto, other than to produce the witness and put him under oath.

III.    Defendant was not prejudiced by the admission of the list of allowed claims against the clothing company for the reason that his own witnesses testified that the liabilities of the bankrupt were greater than was shown by the list, and there is ample evidence *aliunde* that the clothing company was hopelessly insolvent on January 1, 1899.

IV.    It is contended by appellant that the first instruc-

tion given for plaintiff is erroneous in that it fails to instruct the jury as to the good faith, or want of good faith, of the defendant in the purchase of the goods and that there is no evidence that the defendant did not pay a present value for the goods. The instruction is as follows:

"The court instructs the jury that, under the national bankruptcy law, all conveyances and transfers of property made or given by a person or corporation adjudged a bankrupt, within four months prior to the filing of the petition in bankruptcy, with the intent and purpose on the part of the bankrupt to hinder, delay or defraud its creditors or any of them, are null and void, as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; and all property of the debtor so conveyed or transferred shall be and remain a part of the assets and estate of the bankrupt, and shall pass to his trustee, whose duty it shall be to recover and reclaim the same, by legal proceedings, or otherwise, for the benefit of the creditors. The court further instructs you that the petition in bankruptcy against the Mechanics' Clothing Manufacturing Company was filed on the first day of May, 1899, and that said company was thereafter duly declared and adjudged to be a bankrupt, and that the plaintiff in this case is the duly qualified trustee in bankruptcy of said company. If, therefore, you believe from the evidence that at any time within four months prior to the first day of May, 1899, the Mechanics' Clothing Manufacturing Company transferred or conveyed to the defendant a lot of clothing with the intention on its part of hindering, delaying or defrauding its creditors, or any of them, you will find in favor of the plaintiff, provided you also find from the evidence that the defendant, at the time of the transfer to him, did not pay a present fair consideration for such clothing."

The instruction was drawn in exact conformity with section 67 (e), of the Bankruptcy Act of 1899, which controls in this action. The difficulty about the instruction is as to

the sufficiency of the evidence to support it. If the goods were purchased at all they were purchased on the sixteenth day of January, 1899, and paid for on that day by the two notes of the defendant, which were in three days thereafter discounted by the clothing company and afterwards paid by the defendant to the holders. An inference may be drawn that the purchase was not in good faith from the subsequent conduct of the defendant and the chief officer of the company in respect to the sale of the goods, and a jury might draw such an inference. At any rate we are not prepared to say that there was no evidence from which such an inference might not be drawn.

V. Error is assigned for the giving of the third and fourth instructions for plaintiff. They are as follows:

"The court instructs the jury that an insolvent corporation has no right to transfer any of its property to pay one of its creditors in full, if the effect of such transfer will be to enable any such creditor to obtain a preference, or to obtain a greater percentage of his debt than other creditors, and if you find from the evidence that the defendant, prior to May 1, 1899, had delivered to the Mechanics' Clothing Manufacturing Company his two promissory notes aggregating $959.94 for the accommodation of said company, the defendant thereby became a creditor of said company to the amount of said notes, and if you find from the evidence that during the month of March, 1899, the said company was insolvent within the definition given to you by the court, and while so insolvent transferred to the defendant, clothing or merchandise to secure him against the payment of said notes, or for the purpose of paying the defendant the amount of said notes, and if you find from the evidence that the defendant at the time of receiving or accepting said goods had reasonable cause to believe that said Mechanics' Clothing Manufacturing Company intended by transferring such merchandise to defendant to give

him a preference over other creditors, your verdict must be for the plaintiff.

"The court instructs the jury that if you believe from the evidence that the Mechanics' Clothing Manufacturing Company, at the time of making the transfer to the defendant, was actually insolvent, and intended to prefer the defendant over its other creditors by making the transfer to him, and that the insolvent condition of said company and its intention to prefer him over other creditors, were known to the defendant, or that the means of knowledge were at hand, and might have become known to him if he had used such knowledge, or if you believe that such facts and circumstances were known to the defendant as clearly ought to have put a prudent man upon inquiry, you will find that the defendant had reasonable cause to believe that the debtor was insolvent and that a preference was intended to be given him by such transfer."

Section 60 (a and b) of the Bankruptcy Act of 1899, provides as follows:

"(a)   A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class.

"(b)   If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

It is not essential that the court should have informed the jury of the source of the law as declared in the instruc-

tions, as defendant's counsel contended. The more serious contention is, that instruction number four is opposed to the law as declared in this State, in that it told the jury that knowledge that the clothing company intended to make a preference should be imputed to the defendant if the means to obtain such knowledge were at hand and might have become known to him if he had used such knowledge, or if the jury believe that facts and circumstances were known to him, as clearly— ought to have put a prudent man upon inquiry. The rights and liabilities of the parties are controlled by the bankrupt act and when the State law comes in conflict with it, it must yield. In Pepperdine v. Bank, 84 Mo. App. 234, on the authority of In re Eggert, 98 Fed. Rep. 843; Dutcher et al. v. Wright, 94 U. S. 553; Toof et al. v. Martin, 13 Wall. 40, we held that where a debtor is insolvent within the meaning of the bankrupt act, and the creditor has knowledge of the insolvency, or where he has such information as would put a prudent man on inquiry and receives a payment, it follows as a necessary inference that it was intended as a preference and, hence, fraudulent. The instructions are in harmony with this decision and are approved.

VI. There were two counts in the petition and a general verdict to which no objections were made or exceptions saved. As indicated by the verdict, the finding was probably on the first count of the petition. It was largely in excess of the damages proven under either count. This mistake of the jury, however, was cured by the remittitur, and as we fail to find any prejudicial error in the record, and as the evidence is clear that the judgment is for the right party and for the correct amount, we affirm it. All concur.