RIESEN and others, Appellants, vs. SCHOOL DISTRICT No. 4 OF THE VILLAGE OF SHOREWOOD, Respondent.

*February 8—March 8, 1927.*

*Schools: Contracts to erect building: Limit of permissible indebtedness of district: How determined: Testimony and summary of accountant: Offsets not considered: Maintenance funds: Advancements from general fund: Capital indebtedness: Real estate owned but not used: Failure to keep financial records: Not to affect constitutional limitation: Waiver and estoppel: Appeal: Weight accorded findings of trial court.*

1. A school district which alleges that a contract for the construction of school buildings created an indebtedness in excess of the limitation contained in sec. 3, art. XI, Const., has the burden of showing the invalidity of the contract. p. 288.

2. Where the accounts of a school district were long and involved and extended over several years, and had not been accurately kept as required by statute, it was proper to show by a summary statement and testimony of an expert accountant that the indebtedness of the district was in excess of the constitutional limitation, its account books and all data being brought into court for inspection and the cross-examination of witnesses, and the opposing party having been given the time and the opportunity to test the correctness of the summary. pp. 288, 289.

3. The legislature, while it placed a duty upon the officers of a school district to keep accurate financial records, did not intend that a failure of the officers so to do would enable the district to disregard the constitutional limitation of permissible indebtedness.   p. 288.

4. On a disputed question of fact the supreme court will follow the findings of the trial court unless the decided preponderance of evidence is to the contrary, or unless the trial court has not applied correct principles of law in the reception of evidence. p. 289.

5. Under sec. 40.26, Stats., funds provided for the maintenance and operation of schools, as required by sec. 40.25, cannot be diverted for the purpose of building a school house, and if they have been advanced for the purpose of paying other obligations of the district they constitute a liability of the district in determining its debt limitation, since they must be returned to the maintenance and operation fund.   p. 290.

6. Tuition fees paid into the general fund of the district and considered by the school board in making up its budget as funds for maintenance and operation constitute a part of such funds and cannot be deducted from the indebtedness of the district in determining its debt limitation.   p. 291.

7. Money borrowed by the school district from the state, and still owing at the time of making a contract for the construction of school buildings, must be considered a liability in determining its debt limitation, although the loan did not appear on the district books at the time of executing the contract, as the failure of the district officers to properly keep accounts does not authorize the district to avoid its debt limitation.   p. 291.

8. Real estate acquired by the district by the exercise of the right of eminent domain, but not used for school purposes at the time of the execution of the building contract, should not be considered as an asset available as an offset against the indebtedness of the district in determining its debt limitation. p. 292.

9. An assessment for special improvements against certain real estate of the school district, for which the district was liable, constitutes a future capital liability to be considered in determining its debt limitation.   p. 292.

10. Temporary loans made by the school district in anticipation of its revenues for the ensuing year constitute indebtedness of the district within the constitutional limitation.   p. 292.

11. In a case involving a contract, void because in excess of the constitutional limit of permissible indebtedness of a school district, the equities of the parties are not considered, the doctrine of estoppel does not apply, and the constitutional provision cannot be waived by the district officers.   p. 292.

APPEAL from a judgment of the circuit court for Milwaukee county: CHARLES L. AARONS, Circuit Judge. *Affirmed.*

This is an action by the plaintiffs to recover on contract for the building of a school and other buildings for the respondent school district. The complaint sets out eight counts and demands judgment for $40,818.36. The answer alleges that the contracts were void, in that the school district exceeded the constitutional limitation of indebtedness, except as to the sum of $5,191.11, for which it tendered judgment. The trial court determined the facts favorable to the defendant, and gave the plaintiffs judgment for the amount tendered, and dismissed the action as to the balance. The constitutional limitation reads:

"Art. XI, sec. 3. Cities and villages organized pursuant to state law are hereby empowered, to determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village. The method of such determination shall be prescribed by the legislature. No county, city, town, village, school district, or other municipal corporation shall be allowed to become indebted in any manner or for any purpose to any amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness. Any county, city, town, village, school district, or other municipal corporation incurring any indebtedness as aforesaid, shall, before or at the time of doing so, provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years from the time of contracting the same; except that when such indebtedness is incurred in the acquisition of lands by cities, or by counties having a population of one hundred fifty thousand or over, for public, municipal purposes, or for the permanent improvement thereof, the city or county incurring the same shall, before or at the time of so doing, provide for the collection of a direct annual tax sufficient to pay the interest on such debt

as it falls due, and also to pay and discharge the principal thereof within a period not exceeding fifty years from the time of contracting the same."

For the appellants there was a brief by *Alfred Kay,* attorney, and *Eugene L. McIntyre,* of counsel, both of Milwaukee, and oral argument by *Mr. Kay.*

For the respondent there was a brief by *Kaumheimer & Kaumheimer* of Milwaukee, and oral argument by *Leon E. Kaumheimer.*

CROWNHART, J. This case presents another chapter in the financing of *School District No. 4 of the Village of Shorewood, Wisconsin.* The first case concerned an action by the district to compel a bank to take an issue of the district's school bonds and pay for them pursuant to contract. The defense set up that the bonds exceeded the constitutional debt limit of the district and therefore were void. This court sustained that contention. *School Dist. v. First Wisconsin Co.* 187 Wis. 150, 203 N. W. 939. Incidental to the same bond issue, action was brought by a taxpayer to prevent the issuance and sale of the bonds referred to above, and this court granted the prayer of the plaintiff in that action. *Lippert v. School Dist.* 187 Wis. 154, 203 N. W. 940. Thereafter the plaintiffs in the instant case brought an action to recover from the school district the balance due on contracts for building a school house and other similar obligations. The district set up the defense that the contracts were void in that they were executed in violation of the constitution of the state limiting the amount of indebtedness the district could incur. Art. XI, sec. 3, Const. The plaintiffs demurred to the answer, which was overruled by the lower court. This court affirmed the order of the circuit court in an extended opinion where the law of the case was fully considered. *Riesen v. School Dist.* 189 Wis. 607, 208 N. W. 472.

The case now comes here on appeal from a judgment of the circuit court after trial in the same action. The substance of the complaint and answer is fully set out in the former appeal (*Riesen v. School District, supra*), and it will be necessary to refer in this opinion only to the precise issues litigated.

The main contention centers around the question as to the offsets that may be properly allowed against the indebtedness of the district because of cash in the general fund, so called. Preliminary to that question the appellants make serious objection to the manner and sufficiency of the proof of the existing net indebtedness of the district at the various dates when the contracts were entered into.

It appears that the accounts of the district were loosely kept. The books of account, such as were kept, did not show all the facts from which the district's debts could be determined. Resort had to be had to check stubs, contracts, bond records, and other data. The appellants contend that the district should have kept books of account which would show the true financial condition of the district at all times, and that other evidence was incompetent. They cite sec. 15.10, Stats., which provides:

"Every public body shall employ economical, efficient and accurate methods in the conduct of its affairs and accounts, and such as shall result in a reasonable harmony with all other such public bodies; shall keep such accounts as adequately disclose its affairs; and shall make such reports at such times as are reasonably necessary, and in such form as adequately discloses the facts relating to the exercise of its jurisdiction."

They also cite sub. (2), sec. 40.19, Stats., to the effect that the treasurer of the school district shall keep a book in which he shall enter all money received and disbursed by him, and specify all the particulars; and par. 6, sub. (1), sec. 40.21, Stats., requiring the clerk to make a report to the county or city superintendent showing the amount of money

received from the school-fund income, from the tax levied by the county board, from the tax levied by the district, and from all other sources, and showing the manner in which such funds have been expended. Further, that the clerk shall report the amount of indebtedness of the district. Par. 7, sub. (1), sec. 40.21, Stats.

The law certainly contemplates that the records of the school district shall be complete and adequate to show its financial condition at all times. However, we take notice that school district officers are selected from the body of electors with little reference to their knowledge of bookkeeping, and that they in fact seldom have much experience in that line. The legislature, in placing these duties on such officers, could not have intended that the accounts and records of the district would be kept with the accuracy of skilled bookkeepers, and certainly the legislature did not intend that failure on the part of the district officers to keep accurate books of account should enable the district to disregard the constitutional limitation as to its permissible indebtedness. The issue presented by the answer to the complaint was one of fact, to be determined from the best evidence available and under methods recognized by the courts as consistent with justice. This court recently held that a large business concern, suing on a policy of burglary insurance, was not required to keep a complete and accurate set of books, notwithstanding the policy required such books to be kept. If the loss could be set up with reasonable certainty with the aid of other data, it was held sufficient. *Max L. Bloom Co. v. United States Cas. Co.* 191 Wis. 524, 210 N. W. 689. The defendant had the burden of showing the invalidity of the contracts. It secured an expert accountant to set up a stated account showing as accurately as possible the true financial situation of the district, which account was testified to be correct. It was admitted in evidence over the objection of the appellants. It appears that the appellants were furnished with an oppor-

tunity to make the same kind of an accounting, and they employed an expert to set up an account for them. Such expert testified to the substantial accuracy of the account offered by the defendant. Likewise, the secretary and clerk of the school board corroborated the testimony of the accountant. The account books and other data were brought into the court for the purpose of appellants' inspection and cross-examination of witnesses. The accounts were long and involved and extended over several years. Under the circumstances it was proper to prove the facts by a summary statement prepared by an expert. *Ruth v. State,* 140 Wis. 373, 122 N. W. 733. In that case this court said:

"The practice of permitting expert accountants to examine long book accounts and to give in summary form the results thereof for the information of the court and jury is approved as practical and proper in the trial of causes involving the examination of long book accounts. A proper administration, of course, requires that the opposing party shall be afforded the time and opportunity to test the correctness of the evidence, and for this purpose to have access to the books and the use of them for the purposes of cross-examination."

To the same effect also see *Payne v. Franklin County,* 155 Ga. 219, 116 S. E. 627; *Hollingsworth v. State,* 111 Ind. 289, 12 N. E. 490; *State v. Mathis,* 106 La. 263, 30 South. 834; *Jordon v. Osgood,* 109 Mass. 457; *Rosenfeld v. Siegfried,* 91 Mo. App. 169; *Cecil v. Montgomery,* 95 Okla. 184, 218 Pac. 311.

Upon a disputed question of fact this court will follow the findings of the trial court unless the decided preponderance of the evidence is to the contrary, or unless the trial court has not applied correct principles of law in the reception of evidence. *Will of Heymann,* 190 Wis. 97, 208 N. W. 913.

. A careful review of the evidence and findings of the trial court fully convinces this court that the evidence amply sustains the findings.

It appears that the school district prepared each year a budget of the funds required to maintain the school for the ensuing year, and that taxes were accordingly levied for school maintenance. This the district was required by statute to do. Sec. 40.25, Stats. The taxes so levied and collected were put into what was known as a general fund. The district kept only one cash account, and into this account all the funds of the district were intermingled.

It is the contention of the appellants that the cash in the general fund at the date of the contracts sued upon was available as an offset against the district's indebtedness. This was equivalent to the assertion that the district might use the taxes levied for maintenance and operation of the school to build school houses and then be without funds to operate the schools. Sec. 40.26, Stats., provides:

"When lawfully directed by the electors the board shall purchase or lease the site for a school house designated by the district, build, hire or purchase a school house out of the funds provided for that purpose, and sell and convey any site, school house or other property of the district."

Here is a clear legislative expression that school houses are to be built out of funds provided for that purpose, and the funds provided for maintenance and operation cannot be diverted to the purpose of building school houses. *Nevil v. Clifford,* 63 Wis. 435, 443, 24 N. W. 65.

It appears that money was advanced out of the general fund, which belonged to the funds for maintenance and operation of schools, for the purpose of paying other obligations of the district. In setting up the account the accountant charged these amounts as liabilities to the district, that is to say, the district was obligated to maintain and operate the schools and was entitled to a return of the funds so advanced for other purposes. The trial court held, and we think properly so, that the funds so diverted should be returned to the fund for maintenance and operation, and

that, therefore, they constituted a liability of the district. *Rice v. Milwaukee,* 100 Wis. 516, 522, 76 N. W. 341.

It appears that there were $6,000 paid into the general fund as tuition fees, which were considered by the school board in making up its budget as funds for maintenance and operation. This amount the appellants contend should be deducted from the district's indebtedness. We think the trial court very properly held this a part of the fund for maintenance and operation, which could not be diverted to the payment of the district's contract liabilities. *Rice v. Milwaukee, supra.*

The district had borrowed from the state of Wisconsin $10,000, and at the time the contracts were entered into still owed the state this sum. It is the contention of the appellants that because this item did not appear on the books of the district until December, 1924, it could not be considered as a district liability at the time the contracts were entered into on May 14, 1924, and January 29, 1925. There is no substance to this contention. The debt of the district existed and it was properly proven. The fact that the regular books of account did not show the indebtedness did not authorize the district to avoid the constitutional limitation. The failure to properly keep accounts may subject officers to certain penalties but cannot be used to connive at infractions of the fundamental law.

The district owned certain real estate which it had acquired by the exercise of the right of eminent domain but which was not presently used for school purposes. The appellants claim that the value of such real estate should be considered as an asset, available as an offset against indebtedness of the district. This contention confuses indebtedness of the district, as used in the constitution, with the question of insolvency of the district. The constitution does not deal with the question of solvency but with indebtedness. When the district acquired real estate under condemnation proceed-

ings, it had to appear that such real estate was necessary for school purposes. The real estate was acquired for school purposes and not for sale to pay debts. It therefore was not available as an offset against the district's debts.

Certain real estate of the school district had been assessed for special improvements, and the district was liable for the payment thereof. It is the contention of the appellants that this amount should not be considered as a liability against the district. There can be no question but that this was an indebtedness of the district which had to be paid in the future. It was not a liability for current expenses, and therefore it should be considered, as the court held, a future capital liability. *Ill. Cent. R. Co. v. Decatur,* 147 U. S. 190, 13 Sup. Ct. 293; 37 Lawy. Ed. 132; 25 Ruling Case Law, p. 79, note 2.

The district had made some temporary loans for which it had anticipated its revenues for the ensuing year. These amounts were likewise indebtedness within the constitutional limitation. The constitution prohibited the district from becoming "indebted in any manner or for any purpose to any amount" in excess of five per cent. of the assessed valuation. *Earles v. Wells,* 94 Wis. 285, 297–299, 68 N. W. 964; *State ex rel. Marinette, T. & W. R. Co. v. Tomahawk,* 96 Wis. 73, 93, 71 N. W. 86; *Riesen v. School Dist.* 189 Wis. 607, 208 N. W. 472, 474.

The appellants further contend that the equities were all with the appellants, and that the district should be estopped from asserting the constitutional limitation. It is true that the contractors performed their contracts in good faith and the district has received the benefit thereof. If this was a case wherein the district had power to enter into the contracts, a different question would be presented. But the equities of the case are not involved. It is a question of constitutional liability, and the constitutional provision cannot be waived by the district authorities. See *Riesen v. School Dist., supra,* which is the law of this case.

There are other minor questions raised by the appellants, which have had our careful consideration, but they are not deemed of sufficient importance to receive special treatment. The trial court gave very careful consideration to the case on the trial, and wrote a very able and comprehensive opinion, in which we think the findings of the court are fully sustained. We have been greatly assisted in the decision of this case by the able briefs of counsel.

*By the Court.*—The judgment of the circuit court is affirmed.