FARRAR, Appellant, v. BRITTON INDEPENDENT SCHOOL DISTRICT OF MARSHALL COUNTY, et al, Respondents

(32 N. W.2d 627.)

(File No. 8960. Opinion filed May 20, 1948.)

**W. H. Morgan,** of Britton, for Plaintiff and Appellant.
**N. J. Jones,** of Britton, for Defendants and Respondents.

ROBERTS, P.J.  Plaintiff, a resident taxpayer suing in his own right and for all other taxpayers similarly situated, brought this action to enjoin defendant school district and its officers from issuing bonds in the amount of $200,000. Plaintiff challenges the validity of the proposed issue on the ground that an indebtedness will be created in excess of the constitutional limitation.  The court adopted the stipula-

ted facts as its findings and entered conclusions of law to the effect that the proposed issue will not exceed the constitutional debt limit. From the judgment entered accordingly, plaintiff has appealed.

The assessed value of all the taxable property within the school district including moneys and credits of the assessed value of $601,900 is $1,736,763 and five percent of that amount is $86,838.15. The defendant district has no outstanding indebtedness. The court reached the conclusion that the proposed bond issue will not exceed the five percent debt limit by deducting from the amount of the proposed issue the following items:

| | |
|---|---:|
| Cash and securities in the sinking fund for said bonds | $ 12,366.33 |
| Cash and securities in the general fund of the district | 51,836.43 |
| Tuition heretofore earned | 10,400.00 |
| Tax levy for year 1946, appropriated to the sinking fund for payment of proposed bonds | 10,000.00 |
| Uncollected general taxes levied by the district for the years 1939 to 1946, inclusive, excluding taxes on property heretofore sold for taxes | 25,829.00 |
| Uncollected general taxes for the years 1939 to 1946, inclusive, on property heretofore sold for taxes | 1,093.00 |
| Interest and penalty on delinquent taxes for the years 1939 to 1945, inclusive | 1,577.00 |
| The district's proportionate share of the appraised value of all property heretofore sold for taxes and now held by Marshall County under tax deeds, as appraised for the purpose of resale | 400.00 |
| Total Assets | $113,501.76 |

The contentions of appellant, precisely stated, are that moneys and credits cannot be included in the assessed valuation of taxable property as a basis for determining the limit

of indebtedness fixed by the Constitution and that money in the treasury and the other assets listed are not deductible in computing the amount of indebtedness a school district may incur.

Section 4, Article XIII, of the Constitution provides: "The debt of any county, city, town, school district, civil township or other subdivision, shall never exceed five (5) per centum upon the assessed valuation of the taxable property therein, for the year preceding that in which said indebtedness is incurred."

It is asserted that this provision of the Constitution has reference only to the "taxable property" upon which a school district is authorized to levy a tax to pay an indebtedness. It is argued that this limitation must be construed with the provisions of Section 5, Article XIII, of the Constitution, providing that a school district "incurring indebtedness shall, at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof when due." Moneys and credits constitute a separate class of property for the purpose of taxation and are subject to an annual levy of four mills on each dollar of the true and cash value thereof. The assessments are reviewed and equalized, like assessments of other personal property. The taxes are paid to the county treasurer and are apportioned one-fourth to the state, one-half to the county, and one-fourth to the school district in which the property is assessed and taxed. SDC 57.12. The assessed valuation "of taxable property is one thing; the levy is quite another". Miller v. City of Glenwood, 188 Iowa 514, 176 N. W. 373, 376. The constitutional limit is five percent of the "assessed valuation of the taxable property" within a school district. Whether a rate of levy is fixed by statute or by a board of education under a statute authorizing it to fix a rate of levy, the difference can not reasonably be said to change the meaning of the expression "assessed valuation of the taxable property." As said by the court in Hicken v. Board of Education, 153 Minn. 120, 189 N. W. 709, 710, having before it the precise question: "It is true that the amount of the tax is determined in a way

different from that used in respect of other personal property. This is not significant. * * * The tax is a property tax on one species of personal property." The court did not err in including the assessed valuation of moneys and credits in the total upon which the percent limitation was based.

■■ We now come to the second contention of the appellant. This court has recognized that revenue may be anticipated and that liabilities incurred during a fiscal year within the limits of lawful tax levies are not debts within the meaning of the Constitution. Western Surety Co. v. Mellette County, 63 S. D. 243, 257 N. W. 461, and cases cited; Ridgeland School Dist. v. Biesmann, 71 S. D. 82, 21 N. W.2d 324. As this court said in Western Town-Lot Co. v. Lane, 7 S. D. 1, 61 N. W. 982, 985: "The fact that a municipality is indebted to the full constitutional limit does not prevent the same from levying such taxes as it is authorized to levy by law, and issuing its warrants within the limits of such levy in anticipation of their collecton; and, so long as the warrants issued are within the.amounts lawfully levied, they do not create an additional debt. To render such warrants invalid, it must affirmatively appear, therefore, that no tax had been provided for their payment when the warrants were issued." To the same effect in Williamson v. Aldrich, 21 S. D. 13, 108 N. W. 1063, 1064, this court said: "Consistent with what seems to be the weight of well-reasoned authority and upon the theory that taxes assessed and in the process of collection are constructively in the treasury, it has been held in this state that warrants issued to defray current expenses within the amount and in anticipation of such taxes do not incur indebtedness to be considered in determining whether the constitutional limit has been reached or exceeded. So, the execution and exchange of refunding bonds for an equal amount of valid outstanding indebtedness in no manner operates to increase municipal liability, and is not repugnant to the Constitution though at the time of their issuance the aggregate debt of the municipality exceeded the constitutional limitation." Thus reasoning that the constitutional debt limit has reference to an actual indetbedness for the payment of which a tax must be levied this court

therein concludes: "As no contingency will arise that can possibly justify the diversion of any part of the $38,000, now in the sinking fund to a purpose other than the pro tanto diminution of specific indebtedness included in estimating the aggregate liability of the city, there is a clear distinction between such an obligation and the indebtedness of an individual who may or may not pay what he owes and, consequently, his available assets are not to be considered in computing the amount of his actual indebtedness. * * * In estimating the authorized indebtedness of the city the amount in the hands of the treasurer belonging to the sinking fund and applicable only to the payment of specific debts should be deducted from the aggregate indebtedness of the city and in construing similar provisions it has been so held in numerous cases."

In McCavick v. Independent School Dist., 25 S. D. 449, 127 N. W. 476, it was held that where the deduction of cash and the amount of a tax levy in process of collection would bring the amount of a contract within the constitutional limitation the contract was valid. The balance of the obligation incurred was payable from cash and taxes in process of collection and did not therefore become a part of the existing indebtedness of the school district.

In Lollich v. Hot Springs School Dist., 47 S. D. 624, 201 N. W. 354, it was held that in computing the constitutional debt limit for the purpose of issuing bonds the amount of existing indebtedness should be added to the amount of the proposed bond issue and from such total should be deducted cash assets and the amount of taxes levied and in process of collection. Respondents insist that in the instant case all the conditions set forth in the Lollich case are satisfied. Upon deducting the above items of $113,501.76, the deductible assets claimed by respondents, from the amount of the proposed bond issue there remains the sum of $86,498.24, which is within the five percent debt limit. It is true that the manner of computing indebtedness in the Lollich case lends some support to the contention of respondents. The question presented was whether the facts alleged entitled plaintiff to an injunction. The complaint alleged that the

district had a bonded indebtedness of $48,500 and that the cash assets including a sinking fund of $10,000 and taxes in process of collection amounted to $80,197.08. As to the sum in the sinking fund, it was unquestionably a proper offset against the outstanding bonds toward the payment of which it was pledged. Williamson v. Aldrich, supra. The question is not discussed, but the ruling in that case cannot be construed as limiting offsets or deductions from outstanding bonds to sinking funds. The proposed bond issue in itself, however, did not exceed the constitutional debt limit, and the question whether a school district having no existing indebtedness may offset or deduct the full amount of revenues on hand and in process of collection and assets readily convertible into cash from a prospective indebtedness in computing a debt limit was not involved.

In a recent case, Ridgeland School Dist. v. Biesmann, supra, this court had under consideration the validity of warrants issued by the plaintiff school district. One of the questions presented was whether uncollected taxes for prior years could be deducted from the gross debt of the district in ascertaining the margin of constitutional debt limit. It was agreed for purposes of decision that bonds, unpaid warrants and interest on both should be totaled and from such amount there should be deducted cash on hand and at least the amount of the current tax levy and no question was raised as to whether cash resources not set apart to meet a bonded indebtedness could be deducted from such indebtedness.

It should be kept in mind that the "Constitution does not deal with the question of solvency, but with indebtedness." Riesen v. School Dist., 192 Wis. 283, 212 N. W. 783, 786. The object of the constitutional restriction upon the amount of indebtedness that may be incurred is to protect taxpayers from the burdening of their properties beyond five percent of the assessed valuation thereof with the payment of debts. If as respondents contend the cash in the general fund and the other assets listed in the findings of the court are available as offsets in determining whether a proposed bond issue will exceed the debt limit, the school

district could issue bonds as measured by such resources and then expend them, with exception of sinking funds, for the maintenance and operation of the schools of the district. The bonded indebtedness would then far exceed the debt limit of five percent of the assessed valuation. The constitutional limitation is not susceptible of such a construction. We have observed that the appropriation of money and the issuance of warrants in anticipation of revenue in effect does not create an indebtedness or liability within the debt limit provisions of the Constitution. Western Surety Co. v. Mellette County, supra. In re State Warrants, 6 S. D. 518, 62 N. W. 101, 103, 55 Am St. Rep. 852, this Court in referring to an appropriation and issuance of warrants against uncollected revenues said: "Critically considered, it may constitute the incurring of an indebtedness; but it is not an indebtedness repugnant to the constitution, because its payment is legally provided for by funds constructively in the treasury. If the drawing of a warrant upon the state treasury is the incurring of indebtedness by the state, then the drawing of such warrant would violate the constitution, even if there was money in the state treasury to pay it, if the constitutional limit of indebtedness had been reached; for there must always be some time intervening between the drawing of the warrant and its payment, and during such time the indebtedness of the state would be increased beyond the constitutional limit. Such an interpretation of the constitutional limitation would obviously be too hypercritical to be practicable or reasonable. It being once established, as we think it is by the authorities already cited, that the revenues of the state, assessed and in process of collection, may be considered as constructively in the treasury, they may be appropriated and treated as though actually and physically there; and an appropriation of them by the legislature does not constitute the incurring of an indebtedness, within the meaning of section 2, art. 13." Since the defendant school district is not obligated to apply the assets in question to the payment of bonds to be issued, there would be a material difference between bonds issued because of such assets and obligations incurred in anticipation of collec-

234

tion of current revenues. In the former case, the district would be obligated to pay from future taxation, but in the latter case as we have observed payment would be provided for by funds constructively in the treasury and no indebtedness within the meaning of the Constitution would be created. Turning to the decisions of other states having similar constitutional provisionals, we find that the method of determining whether a new indebtedness will exceed a debt limit is a subject of more or less conflict. 44 C. J., Municipal Corporations, § 4059; McQuillin Municipal Corporations, 2d Ed., § 2396; see also Annotations in 92 A. L. R. 1299 and 134 A. L. R. 1399. In Wisconsin, money in the general fund is regarded as "a proper practical offset" against the indebtedness of a city on the theory that a city may use such money momentarily to pay any item of indebtedness. City of Eau Claire v. Eau Claire Water Co., 137 Wis. 517, 119 N. W. 555, 563. Borrowed money, however, which has not been expended cannot be offset against an indebtedness. Herman v. Oconto, 110 Wis. 660, 86 N. W. 681. The cases dealing with debt limitation furnish no basis for the conclusion that bonds may be issued upon the faith of money in the general fund or other assets not set apart to meet the new indebtedness. It appears to us as we have suggested that the constitutional limitation would be rendered wholly ineffectual if it were construed to permit a school district without an existing indebtedness to issue bonds to the amount of such resources in addition to five percent of the assessed valuation of the taxable property within the district.

■ The defendant school district has provided as required by the Constitution a sinking fund. Upon the record before us, the amount on hand to the credit of this fund and the amount of income to be derived from the 1946 sinking fund levy only are available as offsets. The judgment is therefore reversed and the cause remanded with directions to the trial court to enjoin the issuing of bonds in excess of an amount computed accordingly.

SICKEL and HAYES, JJ., concur.

HAYES, Judge (concurring specially).

I concur in the opinion of ROBERTS, P.J.

The record in this case does not include the official budget adopted by defendant school district. A single reference to said budget is made for the sole purpose of revealing a claimed credit, to-wit: the amount of tuition earned and to have been received during the fiscal year ending June 30, 1947. No disclosure is made respecting the amount of anticipated tax collections and cash on hand budgeted or set apart with which to discharge existing and current obligations essential to the maintenance and operation of the school system. It is a fair assumption that cash credits and presently anticipated income, except the sinking fund items, are to be treated by the school authorities as readily and currently expendible for the needs of the school and without regard to the bonded indebtedness. As such credits are expended the indebtedness of the district will exceed the legal debt limit by the amount of such expenditures.

I am unable to adjust my thinking to the view that credits momentarily on hand and charged with the payment of current and anticipated maintenance and operation costs can at the same time be regarded as offsets against a bond issue to be retired some years hence.

Appellant argues that question in his brief and I deem the same of such merit as to warrant an expression of my views.

RUDOLPH, Judge (dissenting).

I concur in the view that the assessed valuation of moneys and credits should be included in computing the constitutional limit of five per cent of the "assessed valuation of the taxable property." I am, however, unable to concur in the holding of the majority that money in the treasury, other than sinking funds, is not deductible in computing the amount of indebtedness a school district may incur. It is my view that such holding cannot be reconciled with the opinions of this court in McCavick v. Independent School Dist. of Florence, 25 S. D. 449, 127 N. W. 476, and Lollich v. Hot Springs School Dist. No. 10 et al., 47 S. D. 624, 201 N. W. 354. I therefore, respectfully dissent.

SMITH, J., concurs in this dissent.