School District No. 6 of City of Greenfield, Petitioner, v. Marine National Exchange Bank of Milwaukee, Respondent.

*January 8—February 2, 1960.*

402

For the petitioner there was a brief and oral argument by *Howard G. Brown* of Milwaukee.

For the respondent there was a brief by *Kaumheimer, Alt & Likert,* attorneys, and *Richard H. Norris III* of counsel, all of Milwaukee, and oral argument by *Mr. Norris.*

MARTIN, C. J.   It is fundamental that every presumption must be indulged to sustain the constitutionality of a law if at all possible, that all reasonable doubts must be resolved in favor of its validity.

As stated in *Payne v. Racine* (1935), 217 Wis. 550, 561, 259 N. W. 437:

"Before a statute can be said to be unconstitutional, the statute must lack in public purpose 'so clear and palpable as to be perceptible by every mind at the first blush.' This was said by Mr. Chief Justice DIXON, who sat in the constitutional convention and helped frame the charter of our state. *Brodhead v. Milwaukee,* 19 Wis. *624, *652. 'We must bear in mind,' said Mr. Chief Justice WINSLOW, 'the well-established principle that it [the statute] must be sustained unless it be clear beyond reasonable question that it violates some constitutional limitation or prohibition.' *Borgnis v. Falk Co.* 147 Wis. 327, 348, 133 N. W. 209. 'The rule of all courts,' said Mr. Justice BARDEEN, 'is that a statute will be declared unconstitutional only when it is shown beyond reasonable doubt that it conflicts with the fundamental law. It is equally true that the courts will seek every reasonable mode of reconciliation of the statute with the constitution, and it is only when reconciliation has been found impossible that it will be declared void.' *State ex rel. Hicks v. Stevens,* 112 Wis. 170, 172, 88 N. W. 48."

Originally the constitution of Wisconsin contained no limitation on the borrowing power of municipal corporations. No limitation was placed on borrowing by school districts for school purposes. That the legislature was free to act in setting limitations on the power of the municipal corporations which it created cannot be questioned.

In 1874 sec. 3, art. XI of the constitution was amended to read, so far as here material, as quoted above. At about the same time similar debt limitations were adopted in many other states. The history and purpose thereof are commented upon as follows in 38 Am. Jur., Municipal Corporations, p. 99, sec. 409:

"In interpreting debt-limit provisions in the constitutions of the states, local statutes, and charters of municipal corporations, the conditions existing prior to their enactment, which they were designed to remedy, should be taken into consideration. It was not until the people in many states found themselves carried along by a wave of public extravagance which was likely to bring them to bankruptcy that they determined to put an end to the danger by setting a limit to expenditures, often in the constitutions themselves. The evil was one of extreme seriousness, and the various debt-limit provisions have been designed primarily to remedy it by establishing safeguards against its recurrence. The historical setting of the various debt-limit provisions bears directly upon the definition of their object and indirectly upon the determination of the courts in most cases to enforce rigorously the provisions in such manner as to attain that object. The clear and unmistakable purpose of such provisions is effectually to protect persons residing in municipalities from the abuse of their credit and the consequent oppression of burdensome, if not ruinous, taxation. The mischief to be prevented is the creation of an excessive debt for local improvements or public works, or the loaning of municipal credit so payable that the burden should not fall upon those who contracted the obligations, or on their revenues, but on posterity."

In *Earles v. Wells* (1896), 94 Wis. 285, 298, 68 N. W. 964, this court was called upon to decide whether or not bonds issued by another and guaranteed by a municipality for the construction of a public utility needed to be counted within the debt limitation fixed by sec. 3 of art. XI, Const. It was held that they did; and the court went on to say:

"So long as the current expenses of the municipality are kept within the limits of the moneys and assets actually in the treasury, and the current revenues collected or in process of immediate collection, the municipality may be fairly regarded as doing business on a cash basis, and not upon credit—even though there may be for a short time some unpaid liabilities. In other words, a municipality's capacity for doing business on such cash basis, with outstanding liabilities, is necessarily measured by the amount of cash on hand and the available assets and resources readily convertible into cash to meet the payment of such liabilities as they become due. But the moment an indebtedness is voluntarily created 'in any manner or for any purpose,' with no money nor assets in the treasury, nor current revenues collected or in process of collection for the payment of the same, that moment such debt must be considered in determining whether such municipality has or has not exceeded the constitutional limit of indebtedness."

It is undisputed that petitioner's budget for 1959–1960 includes an amount sufficient to pay the principal and interest due on the proposed loan on April 15, 1960; that the tax levy includes such amount, as does the tax roll which has been delivered to the city treasurer with a warrant for collection. In *Balch v. Beach* (1903), 119 Wis. 77, 82, 95 N. W. 132, this court held that "taxes in immediate process of collection" are those on a tax roll in the hands of the proper collecting officer with authority to receive them. They do not include taxes merely voted or levied.

Respondent urges that the language quoted from the *Wells Case, supra,* was dicta. That may be, but it is significant

that in a number of subsequent cases it has been cited as authority and in none of them has it been overruled, although in some (as in *Balch v. Beach, supra*) the court has explained or elaborated upon the rule.

Respondent cites *Riesen v. School District* (1927), 192 Wis. 283, 292, 212 N. W. 783, where the court used certain language which might appear to be contrary to the "dicta" of the *Wells Case,* as follows:

"The district had made some temporary loans for which it had anticipated its revenues for the ensuing year. These amounts were likewise indebtedness within the constitutional limitation."

Resort to the briefs in that case discloses that the loans referred to were made prior to the delivery of the tax roll to the treasurer with a warrant for collection. The anticipated revenues were not "taxes in immediate process of collection" under the *Balch v. Beach* decision, *supra*. It is also to be noted that immediately preceding the language quoted the court held the district's liability for the payment of special improvement assessments on its real estate an indebtedness within the contemplation of sec. 3, art. XI, Const., saying, "It was not a liability for current expenses, . . . " It is clear that the court had no intention of overruling the *Wells Case.* Its view was in fact consistent with it.

In *State ex rel. Marinette, T. & W. R. Co. v. Tomahawk* (1897), 96 Wis. 73, 93, 71 N. W. 86, this language in the *Wells Case* was adopted and approved, quoting at length therefrom.

Before the enactment of sec. 67.12 (8a), Stats., the attorney general relied upon the rule of the *Wells Case* in advising the commissioner of banks on questions similar to those involved here. See 43 Op. Atty. Gen. 302.

Most of the cases cited are concerned with the question whether certain items constituted indebtedness under the con-

stitutional limitation or whether certain items could be deducted from admitted indebtedness existing at the time the debts were being measured. Since the parties concede that none of the Wisconsin cases referred to are precisely in point, we deem it unnecessary to discuss them in detail.

As pointed out above, we are constrained to employ every reasonable means of reconciling sec. 67.12 (8a), Stats., with the constitution. The statute embodies the interpretation of the constitutional limitation which this court expressed in the *Wells Case,* an interpretation which has since been considered at frequent intervals by this court and consistently adhered to. The rationale thereof is entirely reasonable. The purpose of the constitutional provision was to limit the burden which those who contract obligations may place upon posterity. This is indicated in the language of sec. 3, art. XI, Const., to the effect that any school district "incurring any indebtedness *as aforesaid"*—referring to the words "indebted in any manner or for any purpose to any amount"—shall, at the time of incurring the same, provide for the collection of taxes sufficient to pay the interest and "to pay and discharge the principal thereof within twenty years." It is entirely reasonable to conclude that sec. 3, art. XI, does not contemplate that the five per cent limitation should apply to short-term loans, such loans constituting the doing of business on a cash basis rather than indebtedness.

What the statute does is put into plain words what the language of sec. 3, art. XI, Const., clearly implies, and what this court since the *Wells Case* has held the constitutional limitation to mean. Sec. 67.12 (8a), Stats., deals with short-term loans required for current operating expenses of the school district and payable out of revenues to which the district is entitled at the time the loans are made. The statute recognizes that obligations continuously arise from the operation of the school district and that although funds for their

discharge are provided for in the district's budget, actual receipt of such revenues must await consummation of the tax-collection process. It is not unreasonable to presume that the framers of the amendment to sec. 3, art. XI of the constitution were also aware of that situation. To consider as "indebtedness" loans negotiated for the purpose of paying such current obligations as they arise—loans payable as soon as the awaited tax revenues are actually received—would involve a more-strict construction than this court is willing to place upon the constitutional language, particularly in view of the interpretation placed upon it in the *Wells Case* and since approved in a number of cases.

As respondent points out, conflicting results have been reached in other states having similar constitutional debt limitations. The constitutions of the six other states referred to—Iowa, West Virginia, Washington, Illinois, Indiana, and Montana—prohibit indebtedness beyond the limit "in any manner or for any purpose," as does sec. 3, art. XI, Wis. Const. The courts in the first three of these states have interpreted their constitutions to permit borrowing for certain current expenses out of current revenues. The courts of Illinois, Indiana, and Montana have followed a strict construction and permit no borrowing in anticipation of taxes when the municipality is indebted beyond its debt limit. In Wisconsin we have employed the more-liberal construction, and we see no reason to change.

Sec. 67.12 (8a), Stats., refers only to "loans required for operating purposes" of a school district. If revenues are due and payable to the district upon a levy including taxes sufficient to pay such a loan, and an assignment of such taxes for payment of the loan has been made, we do not consider that it requires any strained construction of the constitutional language to hold that the loan is not "indebtedness" within the contemplation of sec. 3, art. XI, Const., and that the district is doing business on a cash basis.

*By the Court.*—It is declared and adjudged that sec. 67.12 (8a), Stats., in so far as it permits assignment of taxes levied for repayment of loans required for operating purposes, is valid; and such loans are not to be considered in computing the amount of the indebtedness of a school district under the limitations of sec. 3, art. XI, Wis. Const.