**PERRITT LIMITED PARTNERSHIP, an Illinois Limited Partnership, Plaintiff–Appellant,**

v.

**KENOSHA UNIFIED SCHOOL DISTRICT NO. 1, Defendant–Appellee.**

No. 97–3882.

United States Court of Appeals, Seventh Circuit.

Argued May 13, 1998.

Decided Aug. 21, 1998.

Paul D. Frenz (argued), McBride, Baker & Coles, Chicago, IL; Thomas P. Aiello, Madrigrano, Gagliardi, Zievers & Aiello, Kenosha, WI, for Plaintiff–Appellant.

Ross A. Anderson, Elizabeth O'Neill, Whyte, Hirschboeck & Dudek, Milwaukee, WI, for Defendant–Appellee.

Before RIPPLE, KANNE and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.

In this case, brought to federal court because of the diversity of citizenship between

the parties, Perritt Limited Partnership ("Perritt") sued the Kenosha Unified School District No. 1 ("School District" or "District") for breach of a contract for the purchase of a parcel of real estate owned by Perritt. The defendant School District denied that an enforceable contract was created. The district court agreed with the School District and granted it summary judgment. For the reasons discussed in the following opinion, we now affirm that judgment.

# I

## BACKGROUND

### A.

In June 1994, the School District was searching for a site for a new junior high school. It became interested in Perritt's property, 112 acres of agricultural real estate in Pleasant Prairie, Wisconsin. On June 22, 1994, Perritt tendered an "Offer to Sell" to the School District. By its terms, Perritt offered to sell and convey the property for "$20,000 per acre based on the minimum of 112 acres to be purchased by Buyer and paid by Buyer to Seller at closing." R.1, Ex.A. The offer also stated that the purchase "must be approved by the Board of Education of Buyer on or before June 30, 1994." *Id.* The document was signed by Perritt's agent, Ronald A. Tyrpin, and was dated June 23, 1994. It was not signed by an agent of the School District.[1]

On June 28, 1994, the District's School Board considered the availability of that parcel of property and drew up Resolution No. 173, which stated:

NOW, THEREFORE, BE IT RESOLVED by the School Board of the District that:

(1) The Kenosha Unified School District purchase the 112–acre Perritt site for $20,000 per acre in accordance with the terms of an Agreement of Acceptance by the District.

(2) The School Administration is authorized to complete negotiations and to proceed with surveying, testing of soil, assisting in rezoning and other actions required to satisfy the contingencies in the Agreement of Acceptance to ensure the land may be used for a junior high school.

R.1, Ex.B. The Resolution was signed by Dane Pollei, School Board President, and dated June 28, 1994.

On that date, the School Board was authorized by state statute to approve real estate purchases for the School District and to execute contracts for such purchases. See Wis. Stat. § 120.44. However, the Kenosha School District underwent a reorganization and, on July 1, 1994, the Kenosha *Unified* School District became the Kenosha *Common* School District. The crucial difference between the new and old entities, for our purposes, is that the authority to approve land purchases was taken from the School Board and was given to the electors in the District, to be decided at an annual or special meeting. Under Wisconsin Statutes § 120.10(5m) and § 120.13(20), the new Common School District was required to hold an annual meeting at which the electors of the District could authorize the School Board to buy real estate. In other words, the District had to submit the decision to buy real estate to a district-wide elector vote.

The Board was well aware of the impending reorganization, and the School Superintendent in particular wanted the Board to purchase Perritt's property for the new junior high school. He urged the Board to adopt Resolution No. 173 before the July 1 reorganization so that elector approval would not be necessary. After July 1, the School Administration continued to conduct other negotiations and activity, consistent with the Resolution, that were required to assure that the land could be used for a school. However, as of July 1, 1994, the date on which the District became a Common School District, no signature by a School Board agent had

---

1. Below the Seller's signature line on the document appears the phrase "The above Offer is hereby accepted." The Buyer's agent was to place his signature and the date of acceptance there. The name of Dane Pollei, President of the School Board, was typed in as the appropriate School District agent to execute the transaction.

been affixed to Perritt's Offer to Sell and no Agreement of Acceptance had been written or executed.

On September 22, 1994, after numerous revised counteroffers had been exchanged, the parties executed a Supplement to Contract for Sale of Real Estate. The next day, the School District sent to Perritt three documents[2] constituting the contract for sale between the parties and the earnest money deposit of $25,000. After that date, however, the closing date was extended repeatedly.

On May 2, 1995, the School District advised Perritt that it could not close the real estate transaction without authorization from the electors. At the special meeting of the electors, held May 31, 1995, the electors approved the purchase of 50 acres of Perritt's property rather than the 112–acre minimum offered by Perritt. Perritt refused to sell only 50 acres. Instead, he kept the $25,000 earnest money deposit and filed suit for breach of contract.

### B.

The district court determined that the School District did not accept Perritt's real estate offer before July 1, 1994. It reasoned that the Resolution passed by the Board on June 28 merely authorized the School Administration to pursue negotiations toward the execution of a final contract; therefore, the Resolution itself did not constitute an acceptance. In addition, the court noted, the Board stated in the Resolution that it would be bound by an "Agreement of Acceptance," but that document never was executed. After July 1, 1994, the court determined, the Board lacked the power to accept Perritt's offer outright because the authority to approve the purchase of property was vested by statute in the electors of the School District. Thus, deduced the court, at the time the September 1994 contract was executed by the parties, the School Board did not have the power to conclude the contract. Under the statute then in force, the contract had to be approved by an annual or special meeting of the electors. The electors did not approve the purchase of 112 acres from Perritt, and

their approval of the purchase of 50 acres was rejected by Perritt. Concluding that no valid contract between the School District and Perritt had been executed, the court granted summary judgment to the School District.

## II

## DISCUSSION

We conduct a plenary review of a district court's grant of summary judgment. When the case before us involves undisputed facts and, thus, no genuine issues of material fact, resolution of the case by judgment as a matter of law is appropriate. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We review de novo all legal issues before us, including the question of the validity of a contract, *see Mullowney v. Data Gen. Corp.*, 143 F.3d 1081, 1083 (7th Cir.1998), and the statutory interpretation of Wisconsin's School District Reorganization provisions found in Chapter 117 of the Wisconsin Statutes, *see Morley–Murphy Co. v. Zenith Elecs. Corp.*, 142 F.3d 373, 375–76 (7th Cir. 1998). When statutory interpretation is required, we turn to the language of the statute and then to Wisconsin case law to see how those courts have interpreted the statute. *See id.* at 376 ("We must ascertain how Wisconsin interprets its own law.").

Perritt contends that the district court erred in concluding that the contract for the purchase of Perritt's real estate was not enforceable. It asserts that the School District obtained the requisite approval for the purchase when the Board of the Unified District passed the June 28 Resolution. In Perritt's view, this act by the Board of the predecessor school district fully authorized the acquisition of the real estate without requiring later approval by the electorate.

### A.

We begin our evaluation of Perritt's contention by setting forth the principles of Wisconsin law that must govern our decision.

---

2. The three documents comprising the contract were the Offer to Sell, School Board Resolution No. 173 and Supplement to Contract for Sale of Real Estate. *See* R.1 para. 9 & Exs. A, B & C.

## 1.

■ First, we note that, at bottom, this is a contract matter. In an action for breach of an alleged contract, the burden of establishing the existence of a contract is on the party attempting to recover for its breach. *See Household Utils., Inc. v. The Andrews Co.*, 71 Wis.2d 17, 236 N.W.2d 663, 669 (1976). Here, it is undisputed that Perritt's Offer to Sell constituted a valid offer. There must be, of course, a valid acceptance of the offer, *see Eisenberg v. Continental Cas. Co.*, 48 Wis.2d 637, 180 N.W.2d 726, 734 (1970), and evidence that the parties agreed on the essential terms and conditions of the contract, *see Household Utils.*, 236 N.W.2d at 669; *see also Hoffman v. Ralston Purina Co.*, 86 Wis.2d 445, 273 N.W.2d 214, 217 (1979) ("The question is not the actual intent of the offeree, but his manifested intent.").

## 2.

■ This case involves an alleged contract with a municipal entity. Therefore, we pause next to note that, in Wisconsin, school districts are creatures of state law with express powers granted by statute and implied powers as necessary to execute the powers expressly given. *See Dieck v. Unified Sch. Dist.*, 165 Wis.2d 458, 477 N.W.2d 613, 622 (1991). When school districts are parties to a contract, they are subject to the ordinary principles of contract law that govern all entities. See 10 Eugene McQuillin, The Law of Municipal Corporations § 29.02, at 245 (1990 rev. vol.).

No one disputes that, before July 1, 1994, when the District was a Unified School District, its School Board had the statutory authority to acquire real estate; the Board had the authority to solicit options to purchase, to approve purchases, and to exercise the options. See Wis. Stat. § 120.44(*l*), (2).[3] After July 1, when the District became a Common School District, its Board could only solicit and execute options; the power to approve real estate purchases was vested in the electors, who could designate sites for school buildings, provide for their construction and authorize the School Board to purchase real estate for school district purposes. See Wis. Stat. §§ 120.10(5), (5m), & 120.13(20).[4] Therefore, as the district court recognized, the Board's authority under the post-July 1, 1994 statutory framework was critically restricted: It no longer had the authority to acquire real estate for school purposes. Instead, the District now was required to obtain elector approval for the purchase of property.

---

**3.** The powers of a Unified School District are set forth in § 120.44 of the Wisconsin Statutes:

> (1) A unified school district is a body corporate with the power to sue and be sued, to levy and collect taxes, to acquire, hold and dispose of property and to do all other things reasonable for the performance of its functions in operating a system of public education.
> (2) The public schools of a unified school district shall be under the management, control and supervision of a school board. The school board shall have the powers and duties of the school board and annual meeting in a common school district. The officers of a unified school district have the powers and duties of the officers of a common school district. No annual meeting shall be held in a unified school district....

**4.** The powers of the annual meeting of a Common School District are enumerated in § 120.10 of the Wisconsin Statutes. In pertinent part, the section states:

> 120.10. Powers of annual meeting
> The annual meeting of a common ... district may:
> ....

> (5) Building sites. Designate sites for school district buildings and provide for the erecting of suitable buildings....
> (5m) Real estate. Authorize the school board to acquire, by purchase or condemnation ... real estate and structures and facilities appurtenant to such real estate necessary for school district purposes.

Wis. Stat. § 120.10; *see also Neis v. Board of Educ. of Randolph Sch. Dist.*, 128 Wis.2d 309, 381 N.W.2d 614, 616 (1985) (stating that § 120.10 should be strictly construed because it does not have a "catch-all provision giving to the meeting of electors any powers not specifically enumerated in the statute").

The School Board's powers are set forth in Wis. Stat. § 120.13. The power pertinent to our discussion in this case is the following:

> The school board of a common ... school district may do all things reasonable to promote the cause of education ... including all of the following:
> ....
> (20) Options to purchase real property. Solicit and obtain one or more options to purchase real property and, upon approval of the annual or special meeting, exercise such option.

Wis. Stat. § 120.13.

Finally, we note that Wisconsin law provides for the transition from unified to common district in § 117.27. That provision sets forth the procedure for accomplishing the reorganizational change, see § 117.27(1)-(3), and then states the legal consequences of the change:

> When the type of school district is changed, all property, assets, claims, contracts, liabilities and obligations of the predecessor school district become the property, assets, claims, contracts, liabilities and obligations of the successor school district.

Wis. Stat. § 117.27(4).

### B.

We now turn to an application of these principles to the case before us.

As we have just noted, in an action for breach of an alleged contract, the burden of establishing the existence of a contract is on the party attempting to recover for its breach. Perritt therefore was required to prove that the traditional elements of a contract were present before it could claim a breach. Because it is undisputed that Perritt's Offer to Sell constituted a valid offer, the focus of this litigation has been on whether there was a valid acceptance of that offer and whether the parties agreed on the essential terms and conditions of the contract.

### 1.

■ We begin with the period prior to the transition from the Unified to the Common School District. There is no dispute that, prior to the July 1, 1994, transition date, the School Board of the Unified District had the authority to accept Perritt's offer. At this stage of the litigation, the parties are also in agreement that the action of the Board of the Unified District in passing the June 28, 1994 Resolution did not constitute a definitive acceptance of the offer; that document cannot be read objectively as an acceptance of Perritt's offer. As the district court made clear in its thorough analysis, a resolution generally constitutes an acceptance if it expresses assent to the terms of the proposition. See 10 McQuillin, The Law of Municipal Corporations § 29.03, at 253. Nevertheless, a "resolution authorizing the mayor or other officers to enter into a contract does not of itself create a contract, if not acted upon." Id. at 254.[5]

In this case, the Resolution "resolved" to purchase the Perritt site "in accordance with the terms of an Agreement of Acceptance by the District" and it authorized the School Administration to negotiate, survey, test the soil, assist in rezoning—"and other actions required to satisfy the contingencies in the Agreement of Acceptance to ensure the land may be used for a junior high school." R.1, Ex.B. We believe the district court concluded correctly that the School District's objective intent, as reflected in that Resolution, was preliminary to an acceptance. The document authorized negotiations toward the execution of a final contract, but it neither referred explicitly to Perritt's Offer to Sell nor authorized the signing of that proffered contract. Nor did the Board ever execute the "Agreement of Acceptance" that would have bound the School District. Therefore, the objective intent of the School Board was an intent to commit itself to an "Agreement of Acceptance" in the future, but not on June 28, 1994.

In short, there was no contract at the time of the transition from the Common to the Unified District.

### 2.

■ We now must focus on whether a contract was formed after the date of the transition. To resolve this issue, we begin with the principle, set forth above, that school districts in Wisconsin have the express powers given to them by statute and the implied powers necessary to execute those express powers. See Dieck v. Unified Sch. Dist., 165 Wis.2d 458, 477 N.W.2d 613, 622 (1991).

5. See, e.g., Village of Woodridge v. Bohnen Int'l, Inc., 60 Ill.App.3d 692, 17 Ill.Dec. 931, 377 N.E.2d 121, 122–23 (1978) (holding that motions passed by village board of trustees to "recommend" acceptance of bids did not constitute acceptance); Kearns v. City of Florissant, 393 S.W.2d 841, 842 (Mo.Ct.App.1965) (holding that there is no valid acceptance if there is no showing that the city council authorized the mayor to bind the city).

The law of Wisconsin leaves no doubt about the procedure required for the purchase of land by a common school district: The purchase could be made only "upon approval of the annual or special meeting." See § 120.13. After the transition, there was an exchange of documents and letters between the parties. These documents can be construed as the parties' efforts to bring to fruition the process begun before the transition date. However, these negotiations, and the execution of the Supplement to Contract on September 22, 1994, did not comport with the statutory mandate that the purchase be submitted to the electorate. The School Board simply no longer had the authority to accept Perritt's offer once the reorganization became effective. The Supplement, even though executed by Perritt and the School Board, could not, under the governing statute, constitute a valid contract.

[redacted] Perritt nevertheless suggests that the Unified School Board's previous authorization, under the Resolution, to buy Perritt's land is sufficient authority for the post-transition acquisition. It submits that the transition statute, § 117.27(4) of the Wisconsin Statutes, allows such a result by providing that, "[w]hen the type of school district is changed, all ... obligations of the predecessor school district become the ... obligations of the successor school district." Wis. Stat. § 117.27(4) (emphasis supplied). According to Perritt, once there was approval for the purchase, the School District became "obligated" under that provision to complete that transaction through the negotiation and execution of a contract with Perritt, whether as a unified or common school district.

In our view, Perritt's assertion that the Resolution of the Unified Board "obligated" the subsequent Common School District is untenable. Our reluctance in accepting such a reading of the statute is animated in great part by the consideration that one of the major differences between the two types of school districts is the requirement that the electors of a common school district have the right to approve land purchases. To permit a decision of the predecessor Board to purchase land, *never consummated in a contract,* to go forward would significantly impair the statutory right of the electors and would frustrate the Wisconsin statutory scheme. Perritt's claim that the Resolution is an "obligation" within the meaning of § 117.27(4) that binds the successor is a strained reading of that provision. The use of the term "contract" in that same subsection strongly suggests that relationships that fall short of a contractual relationship were not intended to fall within the ambit of the statutory language. The term "obligations" is more naturally read as applying to duties of a noncontractual nature. Indeed, we agree with the district court that "[t]he examples enumerated in § 117.24(4) connote things that have come to fruition, definite existing rights giving rise to specific remedies. Authority to make a contract, on the other hand, is a mere potential, a hope for things to come." R.31 at 20. We do not believe, therefore, that § 117.27(4) can be construed reasonably to include the Resolution—a nonbinding declaration of intent to purchase in the future. It is merely an agreement to continue negotiating; it cannot qualify as an "obligation."

### Conclusion

The grant of summary judgment by the district court to the School District was correct. Accordingly, the judgment of the district court is affirmed.[6]

AFFIRMED.

[redacted]

6. The School District argued that, because Perritt enforced the stipulated damages clause of its Offer of Sale by retaining the earnest money, it voided the transaction. According to the District, Perritt chose its remedy and is entitled to no more. As did the district court, we decline to address that alternative argument.